United States District Court
for the
Southern District of Florida

| | |
|---|---|
| United States of America *ex rel.* Troy Olhausen, Plaintiff,<br><br>v.<br><br>Arriva Medical, LLC, and others, Defendants. | )<br>)<br>)<br>)<br>) Civil Action No. 19-20190-Civ-Scola<br>)<br>)<br>) |

### Order Denying Motion for Reconsideration and for Leave to Amend

This matter is before the Court upon Plaintiff Troy Olhausen's motion to reconsider denial of leave to amend and motion to amend. (ECF No. 75.) This action arises from Olhausen's allegations that the Defendants either submitted or conspired to submit fraudulent Medicare billing for diabetic and other medical supplies in violation of the False Claims Act, 31 U.S.C. § 3729, *et seq.* (ECF No. 58 at ¶1.) After careful review, the Court granted the Defendants' motion to dismiss, dismissing Olhausen's case in its entirety. *See United States ex rel. Olhausen v. Arriva Med.*, LLC, No. 19-20190-CIV, 2020 WL 5077170 (S.D. Fla. Aug. 27, 2020) (Scola, J.). In response, Olhausen now asks the Court to reconsider its order dismissing his complaint and to afford him leave to amend his complaint. (ECF No. 75.) After careful consideration of Olhausen's motion, the record, and the relevant legal authorities, the Court **denies** his request (**ECF No. 75**).

To begin with, "in the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy that is employed sparingly." *Gipson v. Mattox*, 511 F. Supp. 2d 1182, 1185 (S.D. Ala. 2007). A motion to reconsider is "appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (Hoeveler, J.) (citation omitted). "Simply put, a party may move for reconsideration only when one of the following has occurred: an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." *Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1247 (S.D. Ala. 2008) (quoting *Vidinliev v. Carey Int'l, Inc.*, No. CIV.A. 107CV762-TWT, 2008 WL 5459335, at *1 (N.D. Ga. Dec. 15, 2008)). However, "[s]uch problems rarely arise and the motion to reconsider should be equally rare." *Z.K. Marine Inc.*, 808 F. Supp. at

1563 (citation omitted). Certainly, if any of these situations arise, a court has broad discretion to reconsider a previously issued order. Absent any of these conditions, however, a motion to reconsider is not ordinarily warranted.

Here, Olhausen does not complain that the Court erred substantively in dismissing his third amended complaint. Instead, he argues that the Court "preemptively den[ied] leave to amend his Complaint." (ECF No. 75 at 1.) The Court disagrees with the Plaintiff's characterization of the dismissal order as a "preemptive" denial of leave to amend. The dismissal order concluded, in relevant part, as follows:

> Olhausen has not requested leave to amend; nor has he indicated in his response to the motion to dismiss any inclination whatsoever to do so. The Court thus dismisses Counts II, IV, and VI **without prejudice** and **without leave to amend**. *Wagner v. Daewoo Heavy Industries Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."); *Avena v. Imperial Salon & Spa, Inc.*, 740 Fed.Appx. 679, 683 (11th Cir. 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend.").

2020 WL 5077170, at *9 (emphasis in original). Accordingly, the Court dismissed the complaint and did not *sua sponte* grant leave to amend (*e.g.*, by *sua sponte* granting Olhausen the option to accept the dismissal or file an amended complaint within a certain timeframe). Such a procedure is expressly contemplated by *Wagner*. It appears that Olhausen interpreted the Court's dismissal without leave to amend as though it were an order foreclosing the ability to move for leave to amend. That is not the effect of the Court's order. Accordingly, a party may—as Olhausen has—affirmatively seek leave to amend after dismissal. The Court now turns to whether Olhausen has shown good cause supporting leave to amend.

"The only grounds for granting a Rule 59 motion [to amend] are newly-discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007). Olhausen does not argue that his new allegations rest on newly discovered evidence and he does not argue that the Court's dismissal of the claims without prejudice was an error at all. The motion thus fails to meet the Rule 59 standard, which is the rule pursuant to which the motion was filed. (ECF No. 75 at 2.) Nevertheless, the Court will proceed to

apply Federal Rule of Civil Procedure 16(b)(4). *See Watkins v. Bigwood*, No. 18-cv-63035, 2020 WL 4922359, at *2 (S.D. Fla. Aug. 21, 2020) (Bloom, J.) (citation omitted) (holding, in a case involving a *pro se* plaintiff, "when a motion for leave to amend a pleading is filed after the deadline set in a court's scheduling order, the court employs a two-step analysis" governed by Rule 16(b)(4)). "First, the movant must demonstrate good cause under Rule 16(b) of the Federal Rules of Civil Procedure." *Id.* "If the movant demonstrates good cause, the court proceeds to determine whether an amendment to the pleadings is proper . . . ." *Id.*

The Court finds that Olhausen has not shown good cause for leave to amend after the deadline set in the Court's Scheduling Order. "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension,'" and trial courts have ample discretion to decide whether a plaintiff has shown good cause to excuse a motion for leave to amend filed after the deadline set forth in a scheduling order. *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R. Civ. P. 16 advisory committee's note). The April 20, 2020 Scheduling Order set July 22, 2020 as the deadline to amend pleadings. (ECF No. 69.) Shortly before the scheduling order was entered, the Court granted Olhausen's motion for leave to amend, and he filed his third amended complaint on April 6, 2020. (ECF No. 58.) The Defendants again moved to dismiss and argued that their "last motion to dismiss put Olhausen on notice of this fundamental flaw, yet he has not even tried to address it for most counts—including Counts II and IV, the only theories not subject to statutory bars." (ECF No. 61 at 2.) Thereafter, Olhausen opposed the motion substantively on May 8, 2020. (ECF No. 69.) The Court's July 22, 2020 deadline for amending the pleadings passed and, on August 27, 2020, the Court dismissed the third amended complaint in its entirety.

Four weeks after the dismissal order and two months after the amendment deadline, Olhausen filed the instant motion in which he argues that the case is in a sufficiently early posture such that amendment would not be wasteful, and he further argues that he "reasonably awaited the Court's ruling on Defendants' Motion to Dismiss before moving to amend now based on that ruling." (ECF No. 75 at 11.) The Defendants' motion to dismiss put Olhausen on notice of his pleading's shortcomings. At that point Olhausen had a choice: stand on his pleading and oppose the motion to dismiss or request leave to amend in order to address his pleading's flaws. As a tactical decision, Olhausen chose to oppose the motion and lost. The Court will not now afford him a fifth bite of the apple where he declined "to follow the well-trodden procedural path toward amendment." *Eiber Radiology, Inc. v. Toshiba Am. Med.*

*Sys., Inc.*, 673 Fed. App'x 925, 930 (11th Cir. 2016) (also noting the propriety of dismissal with prejudice "where a counseled plaintiff has failed to cure a deficient pleading after having been offered ample opportunity to do so"). While it is certainly true that our legal system favors the resolution of cases on their merits, that rule is not without limits. Especially where, as here, the plaintiff's own strategic decisions dictated the course of litigation. Here, Olhausen reviewed the Defendants' motion to dismiss, vigorously opposed it and then sat back and waited to see if the Court would let his pleading stand. And then, four weeks after the Court granted the motion to dismiss, Olhausen suddenly came up with a litany of new facts that he claims fix his pleading's deficiencies. Olhausen had every opportunity to fix the deficiencies the Defendants identified prior to the Court's careful and thorough review. He should have taken his best shot from the get-go; he should not have waited for the Defendants and the Court to have worked through his pleading before bothering to inform all involved that he had a much better pleading in his quiver in case things went badly for him. The Court is not persuaded by Olhausen's after-the-fact attempt to recast this tactic as a defensible strategy for having the Court provide a party with a roadmap for how to survive dismissal. None of the new allegations are alleged to be tied to new information uncovered in discovery. At bottom, the delay was a tactical choice that does not warrant leave to amend months after the deadline.

   Lastly, Olhausen's argument that amendment should be allowed under Rule 15(a)(2) misses the mark. (ECF No. 75 at 13.) While the rule indeed requires "[t]he court [to] freely give leave" to amend "when justice so requires," Olhausen has sought leave to amend long after the deadline to do so has passed. When leave to amend is sought ***after*** the deadline to amend the pleadings has passed, the movant must do more than argue leave is due under Federal Rule of Civil Procedure 15(a). That is, the movant must also show "good cause" under Federal Rule of Civil 16(b)(4) in order to obtain the right to amend. *See Sosa v. Air Print Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). The standard set forth in Rule 16(b) "precludes modification [of the scheduling order] unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *See Sosa,* 133 F.3d at 1418. Thus, "diligence is the key to satisfying the good cause requirement." *De Varona v. Discount Auto Parts, LLC*, 285 F.R.D. 671, 672–73 (S.D. Fla. 2012) (Ungaro, J.). Only if "good cause" for an untimely amendment is shown under Rule 16(b), does Rule 15(a)'s instruction, that leave should be freely given when justice so requires, come into play. *See* Fed. R. Civ. P. 15(a)(2). While the standard under Rule 15(a) is lenient, still, "a motion to amend may be denied

on numerous grounds such as undue delay, undue prejudice to the [opposing party], and futility of the amendment." *See Maynard v. Bd. of Regents*, 342 F.3d 1281, 1287 (11th Cir. 2003) (citations omitted). As discussed above, Olhausen has failed to satisfy Rule 16(b) as he did not show good cause justifying his untimely proposed amendment. He merely made the strategic choice to await the Court's ruling. "Permitting another round of amendments" at this point, "would . . . unduly protract [these] proceedings . . . and promote[] judicial inefficiency." *Eiber*, 673 Fed. App'x at 930.

For the foregoing reasons, the Court **denies** Olhausen's motion for reconsideration and for leave to amend (**ECF No. 75**).

**Done and ordered**, in Miami, Florida on January 5, 2021.

Robert N. Scola, Jr.
United States District Judge